1IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DARRYL LANE DIXON,<br>AIS # 161637, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:20-CV-524-RAH |
| JEFFERSON S. DUNN, *et al.*, | ) ) ) | |
| Defendants. | ) | |
| EDWARD SMITH,<br>AIS # 205015, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:20-CV-525-RAH |
| ANNIE BAGGETT, *et al.,* | ) ) ) | |
| Defendants. | ) | |
| RODRIQUES SIMPSON,<br>AIS # 284700, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | CASE NO. 2:20-CV-528-RAH |
| v. | ) ) | |
| JEFFERSON S. DUNN, *et al.*, | ) ) ) | |
| Defendants. | ) | |

1

| | |
|---|---|
| TOREE JONES,<br>AIS # 268125,<br><br>   Plaintiff,<br><br>v.<br><br>JEFFERSON S. DUNN, *et al.*,<br><br>   Defendants.<br><br>KENNETH SHAUN TRAYWICK,<br>AIS # 177252,<br><br>   Intervenor Plaintiff,<br><br>v.<br><br>JEFFERSON S. DUNN, *et al.*,<br><br>   Defendants. | CASE NO. 2:20-CV-542-RAH<br><br><br><br><br><br><br>CASE NO. 2:20-CV-524-RAH |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Pending before the Court is the Defendants' *Motion to Dismiss as to Dixon Plaintiffs* filed on March 24, 2025. (Doc. 125.) The motion is fully briefed and ripe for decision. For the reasons that follow, the motion will be granted.

### BACKGROUND AND PROCEDURAL HISTORY

This case arises out of a custody policy of the Alabama Department of Corrections (ADOC) that treated women and men, with the same convictions, differently. In 2016, ADOC instituted a policy that allowed female inmates, who were incarcerated for certain homicide crimes, to be placed in minimum-community custody. In particular, female inmates who were not serving a life sentence for homicide and had completed 50% of their sentence for homicide were eligible for

2

minimum-community custody. Similar male inmates, however, were not.

In 2020, male inmates Darryl Lane Dixon, Edward Smith, Rodriques Simpson, and Toree Jones (Dixon Plaintiffs) sued, alleging that the policy violated the Equal Protection Clause of the Fourteenth Amendment of the Constitution. The Dixon Plaintiffs sought injunctive relief "to order [the Defendants] to allow the [Dixon Plaintiffs] . . . eligibility (equally to female inmates) for minimum-community custody classification, work release status, in order to achieve rehabilitative opportunities as well as the opportunity to obtain gainful employment." (Doc. 1 at 8.)

Four years later, male sex offender Kenneth Shaun Traywick intervened in the lawsuit and raised a similar disparate treatment claim as pertinent to sex offenders. Like inmates with homicide convictions, under the policy, male sex offenders are ineligible for minimum-community custody while female sex offenders are eligible.

On September 25, 2024, ADOC modified the policy pertinent to women serving homicide convictions. In particular, the policy was updated to eliminate female "inmates convicted of a homicide case" from eligibility for minimum-community custody (doc. 125 at 5), therefore eliminating the differential treatment between male and female inmates convicted of homicides. The Defendants now move to dismiss the Dixon Plaintiffs from this consolidated case on mootness grounds.

## JURISDICTION AND VENUE

When this action was filed, the Court had original subject matter jurisdiction over the federal issues raised here under 28 U.S.C. § 1331. But a court has an ongoing "obligation . . . to examine its own jurisdiction . . . at each stage of the proceedings." *Cuban Am. Bar Ass'n, Inc. v. Christopher*, 43 F.3d 1412, 1423 (11th Cir. 1995) (quoting *Hallandale Professional Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 759 (11th Cir. 1991)). Whether the Court has subject

3

matter jurisdiction is the subject of this opinion.  As for venue, the parties do not contest venue, and adequate allegations exist to support it here.  *See* 28 U.S.C. § 1391.

## LEGAL STANDARD

The Defendants move to dismiss under Fed. R. Civ. P. 12(b)(1).  Fed. R. Civ. P. 12(b)(1) allows a party to assert by motion the defense of "lack of subject-matter jurisdiction."  Federal courts are courts of limited subject matter jurisdiction.  U.S. Const. art. III, § 2.  If a court lacks subject-matter jurisdiction over a matter, it must dismiss it.  *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1268–69 (11th Cir. 2013).

Fed. R. Civ. P. 12(b)(1) permits two forms of attack on a court's subject matter jurisdiction: facial attacks and factual attacks.  *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990).  "Facial attacks" on subject matter jurisdiction are similar to the Fed. R. Civ. P. 12(b)(6) standard in that the court takes the allegations as true and then determines whether the complaint "sufficiently alleged a basis of subject matter jurisdiction."  *Id.* at 1529 (internal quotations and citation omitted).  "Factual attacks," however, "challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings."  *Id.* (internal quotations and citation omitted).  With factual attacks, a "district court may consider extrinsic evidence such as deposition testimony and affidavits."  *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citation omitted).  This means a court may weigh the facts and is "not constrained to view them in the light most favorable to [the plaintiff]."  *Id.* (citation omitted).

## DISCUSSION

The issue before the Court is whether ADOC's policy change, which eliminates the eligibility disparity between male and female inmates convicted of certain homicide crimes, moots the Dixon Plaintiffs' claims.  ADOC argues that it does.

A federal court's subject matter jurisdiction is limited to "Cases" or "Controversies." U.S. Const. art. III, § 2. Without a live case or controversy, the case is moot and must be dismissed for lack of subject matter jurisdiction. *Soliman v. United States ex rel. INS*, 296 F.3d 1237, 1242 (11th Cir. 2002). "A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Id.* (alteration adopted and internal quotation marks omitted) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

If events occur *after* the filing of the lawsuit that "deprive the court of the ability to give the plaintiff meaningful relief," those post-filing events render the case moot, and it must be dismissed. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 115 F.4th 1266, 1283 (11th Cir. 2024) (internal quotation marks and citation omitted). But a case only becomes moot "when it is impossible for a court to grant any effectual relief . . . to [a] prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv. Emps.*, 567 U.S. 298, 307 (2012)). Even if there is only a small interest "in the outcome of the litigation," the case remains live. *Id.*

In the injunctive relief context, "[t]he purpose of an injunction is to prevent future violations." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (citation omitted). Therefore, an action may remain a live case or controversy after the wrongful conduct stops. *See id.* The case is not moot if the party seeking the injunction "satisf[ies] the court that relief is needed." *Id.* To carry this burden and keep the case alive, the party seeking injunctive relief must show that there is still a "cognizable danger" that the violation reoccurs. *Id.* Cognizable danger of reoccurrence is "something more than the mere possibility" of reoccurrence. *Id.*; *Cambridge Christian Sch.*, 115 F.4th at 1283; *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) ("Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if *unaccompanied* by any

5

continuing, present injury or real and immediate threat of repeated injury." (citation omitted) (emphasis added)).

ADOC's policy change moots this case because the Dixon Plaintiffs seek solely injunctive relief. Male and female inmates with homicide convictions are no longer treated differently for purposes of their eligibility for minimum-community custody. Now, neither male nor female inmates are eligible. This change puts female and male homicide inmates back on even footing. As such, there is no active equal protection issue; that is, there is no longer a live constitutional violation. *Chafin*, 568 U.S. at 172; *Soliman*, 296 F.3d at 1244.

The Dixon Plaintiffs raise several arguments against dismissal on mootness grounds. First, they argue the case is not moot because their exclusion from the minimum-community custody represents ongoing and past damages. Specifically, they state that "years of exclusion resulted in lost economic opportunities, diminished parole prospects, and reduced rehabilitative access." (Doc. 127 at 4.) The Dixon Plaintiffs add that they have a right to "seek nominal or compensatory damages for those harms." (*Id.*) The problem, however, is that they did not seek this relief in their complaints. They only sought injunctive relief. As such, they cannot save their claims from dismissal based on relief they never sought.

The Dixon Plaintiffs also claim the two exceptions to the mootness doctrine apply—*capable of repetition yet evading review* and *voluntary cessation*.

The *capable of repetition yet evading review* exception "applies when (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, *and* (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Warren v. DeSantis*, 125 F.4th 1361, 1364–65 (11th Cir. 2025) (per curiam) (internal quotations and citation omitted) (emphasis added); *see also Soliman*, 296 F.3d at 1242–43 ("[C]apable of being repeated and evading review [is] . . . [a] narrow [exception], and applies only in

exceptional situations." (internal quotations and citation omitted)). The plaintiff bears the burden of showing application of this exception. *See Warren*, 125 F.4th at 1364–65.

The Dixon Plaintiffs state that "ADOC has a long and well-documented pattern of altering its policies quietly, frequently, and strategically—often in response to litigation." (Doc. 127 at 2.) Further, the Dixon Plaintiffs argue that "[t]he risk of repetition is not speculative; it is imminent." (*Id.*)

But they have not shown this to be the "exceptional situation" to which this "narrow" exception applies. *Soliman*, 296 F.3d at 1242–43. They have not shown that the nearly five years in which these consolidated cases have been litigated is too short a time to allow meaningful judicial review. *See, e.g.*, *Doe v. Kearney,* 329 F.3d 1286, 1293 (11th Cir. 2003) (holding that because a period of 24 hours was insufficient to allow judicial review of challenged governmental actions, an aggrieved party had standing to challenge them under the "capable of repetition yet evading review" doctrine). Moreover, each Dixon Plaintiff is sentenced to at least twenty years of imprisonment, which is sufficiently long for each of them to challenge ADOC's classification policy if it is reinstated. *See Turner v. Rogers*, 564 U.S. 431, 440 (2011) (explaining that an imprisonment period of one to two years is too short).

Further, the Dixon Plaintiffs have failed to show there is a reasonable expectation that the disparate treatment will reoccur. The Supreme Court has clarified that this "exception requires a 'reasonable expectation' or a 'demonstrated probability' that 'the same controversy will recur.'" *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 463 (2007) (internal quotation marks omitted) (quoting *Murphy v. Hunt,* 455 U.S. 478, 482 (1982) (per curiam)). The Dixon Plaintiffs only hypothesize that ADOC could reinstate the policy and afford females more favorable treatment. They allege that such "reversals have been a recurring

7

tactic throughout ADOC's litigation history." (Doc. 127 at 4.) But the Dixon Plaintiffs do not sufficiently point to specific instances in which ADOC has implemented such reversals, nor have they otherwise demonstrated there is a reasonable expectation or a demonstrated probability that this policy will change again in the future. The Dixon Plaintiffs have therefore failed to show that this case meets the *capable of repetition yet evading review* exception.

The Dixon Plaintiffs also fail to show that the *voluntary cessation* exception applies here. Normally, when a governmental entity, such as ADOC, voluntarily ceases the challenged action, "there is a presumption that the government will not later resume the action." *Walker v. City of Calhoun*, 901 F.3d 1245, 1270 (11th Cir. 2018); *Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1283 (11th Cir. 2004) ("[W]hen the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will *not* recur . . . [C]essation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties . . . . Courts are more apt to trust public officials than private defendants to desist from future violations" (internal quotation marks and citations omitted)); *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328–29 (11th Cir. 2004) ("[G]overnmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities."). However, there is an exception to this presumption when there is a reasonable expectation that the voluntarily ceased activity will, in fact, actually recur after termination of the suit. Therefore, "the opposing party must show a reasonable expectation that the government will reverse course." *Djadju v. Vega*, 32 F.4th 1102, 1108 (11th Cir. 2022) (citing *Walker*, 901 F.3d at 1270).

There are three factors to determine whether there is a reasonable expectation that a defendant will reverse course: (1) whether "the change in conduct resulted

8

from substantial deliberation or is merely an attempt to manipulate jurisdiction"; (2) whether termination of "the challenged conduct was unambiguous, i.e., permanent and complete"; and (3) whether the defendant "has consistently maintained its commitment to the new policy or legislative scheme." *Id.* at 1109. Such factors are non-exhaustive and non-dispositive and instead guide courts in examining whether the doctrine of *voluntary cessation* applies. *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1268 (11th Cir. 2020).

Ultimately, the question under *voluntary cessation* is whether a plaintiff has shown a "substantial likelihood" that a "government defendant will reverse course and reenact" the offending conduct. *Keohane*, 952 F.3d at 1268 (internal quotation marks and citation omitted). For the Dixon Plaintiffs' suit to continue, they therefore must show that there is a reasonable expectation that ADOC is likely to "'reverse course' and reinstate the repealed policy if the lawsuit is terminated." *Cambridge Christian Sch.*, 115 F.4th at 1284 (quoting *Keohane*, 952 F.3d at 1268).

There is no factual basis here to conclude that a reasonable expectation exists that the custody policy will be changed once again. The Dixon Plaintiffs argue that the change is an "abrupt reversal[]" with the intent to evade judicial review. (Doc. 127 at 4.) But they have not provided any evidence of it. *Cambridge Christian Sch., Inc.,* 115 F.4th at 1286 ("Also, while the new statute may have been enacted in response to Cambridge Christian's legal challenge, there's no evidence the change is temporary or was made in 'an attempt to manipulate our jurisdiction.'"). Rather, the record shows the policy change came about because ADOC decided to abandon the pilot program from the Tutwiler Consent Decree in August 2024 and because of a deliberate prioritization of public safety.

Further, the Dixon Plaintiffs argue the policy change is not permanent because ADOC could reverse course at a later point in time. This is technically true, but the record reveals the policy modification evinces a permanent policy change rather than

discretionary nonenforcement. And the Dixon Plaintiffs have not pointed to specific instances in which ADOC has reversed policy changes sufficient to rebut the presumption of good faith that exists here. In short, the Dixon Plaintiffs have failed to carry their burden that ADOC will "'reverse course' and reinstate the repealed policy if the lawsuit is terminated."[1] *Cambridge Christian Sch.,* 115 F.4th at 1284. The Dixon Plaintiffs have therefore failed to show that this case satisfies the *voluntary cessation* mootness exception.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) The Defendants' *Motion to Dismiss as to Dixon Plaintiffs* (doc. 125) is due to be and is hereby **GRANTED**;

(2) The claims of Plaintiffs Darryl Lane Dixon, Edward Smith, Rodriques Simpson, and Toree Jones are **DISMISSED** without prejudice;

(3) The Clerk of Court is hereby **ORDERED** to terminate Case Numbers 2:20-cv-525, 2:20-cv-528, and 2:20-cv-542;

(4) The claims of Plaintiff Kenneth Shaun Trawick, Case Number 2:20-cv-524, remain pending and shall proceed under that case designation.

**DONE,** on this the 10th day of June 2025.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE

---

[1] The Dixon Plaintiffs also invoke the possibility of new litigation initiated by female inmates who have been adversely impacted by the policy change. That may be so. But the Dixon Plaintiffs lack standing to assert harms suffered by female inmates.