IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KENNETH SHAUN TRAYWICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:20-cv-00524-RAH-CWB |
| | ) |
| JOHN Q. HAMM, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

This is a 42 U.S.C. § 1983 action brought by Kenneth Shaun Traywick, an inmate currently housed with the Alabama Department of Corrections for, among other things, a sex offense conviction. Traywick alleges the ADOC[1] is violating the Equal Protection Clause of the Fourteenth Amendment by allowing female sex offenders to receive *minimum-in* custody classifications while simultaneously prohibiting male sex offenders from receiving the same classification designation. ADOC has moved for summary judgment. The motion is fully briefed and ripe for decision. For the reasons more fully set forth below, the motion is due to be granted.

### JURISDICTION AND VENUE

Subject matter jurisdiction is conferred by 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3), (4). The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. *See* 28 U.S.C. § 1391.

---

[1] Traywick has sued the Alabama Department of Corrections, Commissioner John Q. Hamm, Director Angie Baggett, and Warden Kenneth Peters. The Defendants will be collectively referred to as the ADOC.

## STANDARD OF REVIEW

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" based on the materials in the record. Fed. R. Civ. P. 56(a), (c). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Whether a fact is material is determined by the applicable substantive law. *Id.* An issue is not genuine if it is unsupported by evidence or created by evidence that is "merely colorable, or is not significantly probative." *Id.* at 249 (citations omitted). "[A] court generally must 'view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Fla. Int'l Univ. Bd. Of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018) (citations omitted).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant can satisfy its burden of proving the absence of a genuine dispute by citing to materials in the record or by showing that the nonmovant cannot produce evidence to establish an element essential to their case to which it has the burden of proof. Fed. R. Civ. P. 56(c)(1); *Celotex Corp.*, 477 U.S. at 322–23.

If the movant meets its initial burden, the burden then shifts to the nonmoving party to establish "specific facts showing that there is a genuine issue for trial" with evidence beyond the pleadings. *Celotex Corp.*, 477 U.S. at 324 (citing Fed. R. Civ.

P. 56(e)). Generally, the "mere existence of a scintilla of evidence" supporting the nonmoving party's case is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.

## FACTUAL BACKGROUND

ADOC currently classifies inmates in one of five custody classification levels: close-custody (the highest), medium, minimum-in, minimum-out, and minimum-community (the lowest). (Doc. 137-1 at 3.)

In 2016, ADOC instituted a policy that allowed female inmates with certain homicide convictions to be placed in the lowest custody classification – minimum-community – while prohibiting male inmates with similar homicide convictions from receiving the same classification. (Doc. 27 at 3.) In 2020, inmates Darryl Dixon, Edward Smith, Rodriques Simpson, and Toree Jones (Dixon Plaintiffs), all of whom had homicide convictions, sued over the policy because it allegedly violated the Equal Protection Clause of the Fourteenth Amendment. (Doc. 1.)

Four years later, Traywick[2] intervened in the lawsuit and raised a similar disparate treatment claim, but as it pertained to male and female sex offenders. (Doc. 98.) Under current ADOC policies, female inmates with sex offense convictions are eligible for minimum-in custody classifications while male inmates with similar sex offense convictions are not. Instead, the lowest custody classification male inmates can receive is medium custody. (Doc. 137-2 at 36; Doc. 137-4 at 34.) Traywick is presently classified as medium custody, the lowest custody classification eligible for male sex offenders. (Doc 137-9 at 1.)

On September 25, 2024, ADOC modified the policy and eliminated the disparity between male and female inmates with homicide convictions. (Doc. 125-1

---

[2] Traywick is sixteen years into a 50-year sentence for first-degree robbery and sodomy. (Doc. 137-7 at 1–2.)

at 4.) Now, no male and female inmates with homicide convictions can receive minimum-community classifications. No such modification has been made to inmates with sex offense convictions.

Following ADOC's modification, the claims of the Dixon Plaintiffs[3] were dismissed without prejudice, leaving only Traywick's claims seeking declaratory, injunctive, and monetary relief as well as reasonable attorneys' fees. (Doc. 98 at 3–4.) It is Traywick's claims that are the basis of ADOC's summary judgment motion.

## DISCUSSION

Traywick's Intervenor Complaint, and ADOC's summary judgment motion, present one issue – whether ADOC's eligibility disparity between male (who cannot receive minimum-in classification designations) and female sex offenders (who can receive minimum-in classification designations) violates the Equal Protection Clause of the Fourteenth Amendment. ADOC says that it does not. Based on the record presented by the parties on this narrow issue as presented at the summary judgment stage, the Court agrees with ADOC.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Importantly, because most laws differentiate between classes of persons in some way, the Equal Protection Clause does not forbid all classifications. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). It is "essentially a directive that all persons similarly situated should be treated alike," *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985), and "simply keeps governmental

---

[3] The Dixon Plaintiffs only sought equitable relief; that is, elimination of the disparate treatment between male and female inmates. When ADOC eliminated the pertinent policy, the disparate treatment ceased, thereby mooting the Dixon Plaintiffs' claims.

decisionmakers from treating differently persons who are in all relevant aspects alike," *Nordlinger*, 505 U.S. at 10.

Whether a state law violates the Equal Protection Clause often turns on what level of scrutiny the court applies. *See Clark v. Jeter*, 486 U.S. 456, 461 (1988) ("In considering whether state legislation violates the Equal Protection Clause . . . we apply different levels of scrutiny to different types of classifications."). Generally, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne*, 473 U.S. at 440. This is known as rational basis review and applies when "the classification neither burdens fundamental rights nor targets a suspect class." *Estrada v. Becker*, 917 F.3d 1298, 1308 (11th Cir. 2019). However, "[c]lassifications based on race or national origin, and classifications affecting fundamental rights, are given the most exacting scrutiny," known as strict scrutiny. *Clark*, 486 U.S. at 461 (citations omitted). Under strict scrutiny, a regulation will be upheld only if the government adopts "the least restrictive means of achieving a compelling state interest." *McCullen v. Coakley*, 573 U.S. 464, 478 (2014).

Between rational basis and strict scrutiny lies intermediate scrutiny. Intermediate scrutiny applies when the state law or policy makes a classification based on sex. *See United States v. Virginia*, 518 U.S. 515, 531 (1996). The law or policy will be upheld only if the government can show "at least that the challenged classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Id.* at 533 (citations omitted). For a governmental objective to be important, it cannot "rely on overbroad generalizations about the different talents, capacities, or preferences of males and females." *Id*. For a law or policy to be substantially related to an important governmental objective, there must be "enough of a fit between the . . . [policy] and its asserted justification." *Danskine v. Mia. Dade Fire Dep't*, 253

5

F.3d 1288, 1299 (11th Cir. 2001). However, unlike with strict scrutiny, the law or policy need not be the least restrictive means of furthering the government interest. *See Nguyen v. I.N.S.*, 533 U.S. 53, 70 (2001).

Citing to *Turner v. Safley,* ADOC argues that a special standard, essentially a form of rational basis review, applies because this case involves the constitutional rights of an inmate. 482 U.S. 78, 89 (1987) ("[w]hen a prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."). Citing *United States v. Virginia*, Traywick argues that ordinary intermediate scrutiny applies since Traywick's allegations concern a gender-based classification. 518 U.S. at 555 ("all gender-based classifications today 'warrant' heightened scrutiny.") (quoting *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 136 (1994)).

Regardless of which standard of review applies to Traywick's claim, to prevail on an Equal Protection claim, Traywick must show that he is similarly situated to female inmates who receive more favorable treatment than Traywick because of their gender. Because of this, "[a] preliminary step in equal protection analysis is to determine whether persons who are similarly situated are subject to disparate treatment." *Rodrigeuz v. Lamer*, 60 F.3d 745, 749 (11th Cir. 1995) (quotations omitted). And where parity of treatment exists, there is no need to determine what level of scrutiny applies. As such, the Court's analysis will focus on the issue of whether there are specific facts showing that there is a genuine issue for trial with evidence beyond the pleading allegations and argument by counsel.

In his Intervenor Complaint, Traywick alleges that ADOC's classification policy, as applicable to male sex offenders like himself, constitutes discrimination based on sex and therefore violates the Fourteenth Amendment. Traywick alleges the disparity "results in a significant difference in the access to safe living environments, rehabilitative/vocational and educational programs, and work

opportunities." (Doc. 98 at 2.) In its summary judgment motion, ADOC counters that, while it is true that female sex offenders are eligible for minimum-in classification designations and that male sex offenders are not, there is still parity of actual treatment because, as it pertains solely to sex offenders, there is no tangible difference between a female sex offender with a minimum-in custody classification and a male sex offender with a medium custody classification (Doc. 138 at 3.) According to ADOC, this is true in application to all of the alleged harms that Traywick raises in his Intervenor Complaint, including: living environments; rehabilitative, vocational and educational programs; and work opportunities; as well as a belated argument about parole outcomes.

As it concerns living arrangements, i.e., housing, ADOC has presented evidence showing that ADOC assigns each inmate a scored custody level which translates into one of three custody levels and a security level indicator that determines the inmate's specific facility placement. (Doc. 137-1 at 3.) The security level indicator can range from I-VII, with I being the lowest level of security and VII being the highest. (*Id.*) Close custody has security levels of V or VII, medium custody has levels of IV or V, minimum-in has a level of IV, minimum-out has a level of II, and minimum-community has a level of I. (*Id.*) Importantly here, according to ADOC, neither male nor female sex offenders are eligible for a security level lower than IV. (*Id.* at 5.)

Traywick currently holds a medium custody classification and, because he is a sex offender, he holds a security level IV designation. His level IV designation places him at Fountain Correctional Center, a level IV prison for male inmates. Fountain houses both medium and minimum-in custody inmates. (Doc. 137-4 at 52.) Because Fountain houses both medium and minimum-in inmates, even if Traywick held a minimum-in custody classification, as a sex offender with an IV security level designation, he would remain at Fountain. (Doc. 137-1 at 4–5.) As such, dropping

7

from medium custody to minimum-in custody for classification purposes does nothing to change Traywick's "access to safe living environments." In other words, male and female sex offenders are treated in parity when it comes to housing because of their security level IV designation. Traywick has provided no evidence contesting this; only attorney argument. And the opinions, allegations, and conclusory statements and argument of counsel do not constitute evidence, nor may the nonmoving party rely upon them to defeat a summary judgment motion. *See Lachance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998); *Bowden v. Wal-Mart Stores, Inc.,* 124, F. Supp. 2d 1228, 1236 (M.D. Ala. 2000). As such, ADOC's summary judgment is due to be granted to the extent Traywick alleges there is a disparity in living arrangements associated with their custody classification status.

As to job opportunities, Traywick alleges that employment opportunities, while in custody, are adversely impacted by the disparity in treatment; that is, with a minimum-in custody classification, Traywick would have access to certain on-site and community-based jobs that medium custody classified inmates do not. ADOC has presented evidence showing that this is true in general as it concerns community-based jobs, but that the job opportunities are largely driven by the inmate's security level when it comes to sex offenders. ADOC has presented evidence showing that inmates with minimum-out and minimum-community classifications can work outside the prison without direct correctional supervision in community-based job assignments but that minimum-in and medium custody inmates are limited to jobs on prison grounds. (Doc. 137-4 at 30, 34–36.) This evidence also shows that, to be eligible for community-based work assignments, the inmate must have a security level lower than IV; that is, levels I-III. (Doc. 137-1 at 4–5.) Again, sex offenders, regardless of sex, can hold a security level no lower than IV, and as such, sex offenders, regardless of sex, cannot hold any community-based jobs. *(Id.* at 3.) Thus,

8

female sex offenders who may hold minimum-in classifications will never qualify for any community-based employment just like Traywick cannot. Traywick has not presented any evidence rebutting this point.

Moreover, as it concerns on-site work assignments, while Traywick argues that male sex offenders are treated differently from female offenders, ADOC has presented evidence showing that this is a false accusation. Specifically, Traywick, claims that female sex offenders with minimum-in classifications have access to Alabama Correctional Industries (ACI),[4] but that male sex offenders do not. (Doc. 89 at 2.) ADOC has presented evidence in the form of employment roster logs that dispel this assertion, showing that medium classified male inmates are in fact employed with ACI. (Doc. 137-1 at 6, 259–87.) Once again, Traywick does nothing to rebut this evidentiary showing. As such, ADOC's summary judgment is due to be granted to the extent Traywick claims a disparity in job opportunities associated with his custody classification status.

ADOC also argues there is no disparity in sex offenders' access to rehabilitative, vocational and education programs, and it provides evidence in support of that point. ADOC's submission shows that medium and minimum-in inmates, regardless of sex, are eligible for the same rehabilitative, educational and vocational programs, including trade school, apprenticeships, GED programs, and rehabilitation classes.[5] (Doc. 137-1 at 7.) Other than attorney argument, Traywick again responds with no evidence disputing ADOC's position. For example,

---

[4] ACI is a division of ADOC providing work training and low wage employment on prison property. (Doc. 137-1 at 6.)

[5] Traywick has earned program certificates in Anger Management, Applied Mathematics, and Sex offender Awareness, (doc. 137-10 at 1–3), a training certificate for Automotive Body Repair from Coastal Alabama Community College, (*id.* at 4), has served as a peer trainer in the trade school at his correctional facility, (doc. 137-13), and has completed the Institution Pre-Release and Re-Entry Program at Fountain Correctional Facility, (doc. 137-10 at 5).

9

Traywick presents no evidence showing that Traywick or any male sex offender has ever been denied any opportunities as a medium-custody male sex offender in rehabilitative, vocational and educational programs that are offered to minimum-in custody female sex offenders. As such, the record shows that male and female sex offenders are treated in parity when it comes to programming, and therefore, ADOC is entitled to summary judgment on this issue as associated with their custody classification status.

Finally, ADOC disputes Traywick's assertion that parole outcomes are impacted.  Traywick has submitted ADOC's monthly reports from October 2023 to September 2024, which he claims shows "a clear and well-established correlation between a lower security label and an increased chance of being granted parole." (Doc. 142 at 3.) ADOC counters that these reports do not show a disparity between male and sex offenders because the reports broadly group minimum-in and minimum-out inmates of any conviction together, and sex offenders, regardless of sex, can never carry a minimum-out classification. (Doc. 148 at 6.)  Thus, according to ADOC, it is entirely expected that the number of paroles granted would favor minimum custody inmates over medium custody inmates in general, because minimum-in and minimum-out inmates, as a general rule, have committed less serious crimes than medium classified inmates. In other words, the reports do not contain the detail necessary to substantiate Traywick's blanket allegation that sex offenders with minimum-in classifications are granted parole at higher rates than sex offenders with medium custody classifications.  The Court agrees that the reports are far too broad and vague to support the inference that Traywick attempts to make from them.  As such, the reports, which are the only evidence that Traywick presents, do not sufficiently evidence disparate treatment that impacts parole outcomes.

ADOC is therefore entitled to summary judgment on this issue as associated with their custody classification status.

In one last ditch effort to save his case, Traywick retreats to the distinction in classification labels itself. Traywick argues that the distinction in classification labels between male and female sex offenders is itself unconstitutional, even if the distinction does not result in any material or tangible effects. (Doc. 142 at 2.) This assertion ignores the pertinent inquiry necessary to show an injury for Article III purposes.

Indeed, an injury in fact, that is, "an invasion of a legally protected interest which is [] concrete and particularized," is a required element of Article III standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "A concrete injury must be de facto; that is, it must actually exist . . . real and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (citations omitted). And when a plaintiff alleges a denial of equal protection under the Fourteenth Amendment, the plaintiff's injury in fact is the "the denial of equal treatment resulting from the imposition of [a] barrier." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993); *Wooden v. Bd. Of Regents of Univ. Sys. Of Ga.*, 247 F.3d 1262, 1280 (11th Cir. 2001) (Plaintiff must allege that he will experience "direct exposure to unequal treatment.").

Here, while there might be a distinction in classification labels between male and female sex offenders, Traywick still must show that there is a concrete harm of some sort. *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) ("general factual allegations of injury can suffice . . . [but those] general factual allegations of injury must plausibly and clearly allege a concrete injury." (quotations and citations omitted.). Further, a federal court cannot "imagine or piece together an injury sufficient to give [a] plaintiff standing when it has demonstrated none," or "create jurisdiction by embellishing a deficient allegation of injury." *Id.* at

11

925 (quoting *Miccosukee Trive of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229-30 (11th Cir. 2000)). The naked[6] assertion by Traywick that male and female sex offenders are labeled differently for classification purposes, without any evidence of a concrete or tangible harm or a barrier, cannot standing alone support an Equal Protection claim at the summary judgment stage. Traywick must show more, and he has not done that here.

## CONCLUSION

For the reasons stated, the Defendant's Motion for Summary Judgment (doc. 138) is due to be **GRANTED**. A separate Final Judgment will be entered.

DONE on this the 18th Day of November 2025.

 

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE

---

[6] From a labelling perspective, there is a disparity between male and female sex offenders. And perhaps there are others, but the record does not bear that out. Traywick has not presented evidence of any disparity other than labeling. Attorney argument and suspicions is not evidence. Traywick had ample time during the discovery period to investigate and gather the evidence necessary to prove his claims. His counsel did not do so. As such, the outcome in this case largely driven by the record presented to this Court which is an evidentiary filing by ADOC and the lack of the same by Traywick.